Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Krystal Lopez, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>vs.<br><br>Zarbee's Inc.,<br><br>*Defendant*. | Case No.   5:22-cv-4465<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents

I.      Introduction. ........................................................................................................ 1

II.     Parties. ............................................................................................................... 2

III.    Jurisdiction, venue, and divisional assignment. ................................................ 2

IV.     Facts. ................................................................................................................. 2

        A.      It is important to consumers that over-the-counter melatonin is accurately
                dosed and labelled. .............................................................................. 2

        B.      Scientific research reveals serious problems with the accuracy of melatonin
                dosing and labelling in Canada.  Scientists warn that the same is likely true of
                some U.S. brands. ................................................................................. 4

        C.      Zarbee's sells over-the-counter melatonin supplements to millions of U.S.
                consumers. ............................................................................................ 5

        D.      Scientific testing reveals that Zarbee's Melatonin has substantial and random
                overdoses of melatonin. ........................................................................ 7

        E.      Zarbee's labelling is false and misleading to reasonable consumers. ............... 7

        F.      Zarbee's overcharges millions of consumers. ...................................... 9

        G.      Ms. Lopez was misled and harmed by Zarbee's misleading labelling. ......... 9

V.      Class action allegations. .................................................................................. 10

VI.     Claims. ............................................................................................................. 12

        Count 1: Violations of State Consumer Protection Acts ................................. 12

        Count 2: Violation of California Unfair Competition Law (UCL) ................... 13

        Count 3: Violation of California's False Advertising Law (FAL) .................... 14

        Count 4: Breach of Express Warranty ............................................................. 15

        Count 5: Negligent Misrepresentation ............................................................. 16

        Count 6: Intentional Misrepresentation ........................................................... 17

        Count 7: Unjust Enrichment/Quasi-Contract ................................................... 17

VII.    Jury Demand. ................................................................................................... 18

VIII.   Prayer for Relief. ............................................................................................. 18

## I.      Introduction.

1.      Melatonin is a neurohormone that regulates the brain's sleep cycle.  Millions of consumers take over-the-counter melatonin supplements to help them sleep.  Because melatonin alters brain chemistry, it is important that these supplements are accurately dosed and labelled.

2.      A few years ago, scientists tested Canadian melatonin supplements and found that, for a number of brands, the true amount of melatonin varied wildly from the label.  Scientists, the National Institute of Heath, and consumer advocates have warned that the same is true in the U.S.

3.      Zarbee's is a major U.S. brand of melatonin supplements, sold nationwide at retailers like Walmart, Kroger, and Target.  Many Zarbee's melatonin products are specifically marketed for young children.  Each bottle claims to have a specific dose of melatonin per serving.  For example:




4.      Like millions of other consumers, Ms. Lopez bought Zarbee's melatonin for her children and trusted the accuracy of Zarbee's dosing and labelling.  To determine how much melatonin is really in Zarbee's, a university mass-spectrometry laboratory tested multiple bottles, including her bottle. The results were alarming—the bottles are substantially (and seemingly randomly) overdosed. The true amount of melatonin in her bottle was 216% of the claimed amount.

5.      Zarbee's systematically misrepresents how much melatonin is in the supplements it sells.  Consumers are being misled and overcharged and children are being put at risk.

## II.      Parties.

6.      Plaintiff Krystal Lopez is domiciled in Salinas, California.

7.      The proposed class includes citizens of every state.

8.      Defendant Zarbee's Inc. is a Delaware corporation with its principal place of business at 11650 State St. #101, Draper, Utah 84020.

## III.     Jurisdiction, venue, and divisional assignment.

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

10.     The Court has personal jurisdiction over Defendant because Defendant sold Zarbee's melatonin products to consumers in California, including to Plaintiff.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Zarbee's melatonin products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

12.     <u>Divisional Assignment</u>.  This action arose in Monterey County (San Jose Division). Ms. Lopez purchased Zarbee's melatonin while living in Salinas (in Monterey County). Thus, a substantial part of the events giving rise to the claim occurred in Monterey County.

## IV.     Facts.

### A.      It is important to consumers that over-the-counter melatonin is accurately dosed and labelled.

13.     Melatonin (N-acetyl-5-methoxytryptamine) is a neurohormone produced by the pineal gland in the brain.  It regulates the brain's circadian rhythm and sleep cycle.



*The chemical structure of melatonin*

14.     Millions of U.S. consumers take melatonin supplements to treat sleep problems, anxiety, and other issues.  Melatonin is one of the most popular over-the-counter supplements in the U.S., and its use has "significantly increased" in the last 20 years. [1]  Its use to help children sleep is becoming increasingly popular too, which concerns health experts. [2]

15.     As scientists explained in the Journal of Clinical Sleep Medicine, because melatonin is "self-prescribed" (i.e., purchased directly by consumers who are not experts), it is particularly "important that labels are informative and representative of the product," i.e., that the "label claim values for the active ingredient are accurate." [3]  When melatonin is falsely labelled, "higher doses could lead to unpleasant/unexpected side effects." [4]  Side effects of melatonin include headaches, dizziness, nausea, or excessive or unwanted sleepiness. [5]  "Many experts recommend starting with the smallest available dosage — 0.5 milligrams to 1 milligram." [6]  When melatonin is given to children, the American Academy of Pediatricians (AAP) warns that "quality may not be the same for all melatonin products" and recommends its use only "cautiously and carefully."  The AAP

---

[1] JAMA Research Letter, *Trends in Use of Melatonin Supplements Among US Adults*, 1999-2018, 327(5) JAMA 483 (2022).
[2] The New York Times, *Parents Are Relying on Melatonin to Help Their Kids Sleep. Should They?*, https://www.nytimes.com/2020/05/18/parenting/melatonin-sleep-kids.html
[3] Erland, L. & Saxena, P., *Melatonin Natural Health Products and supplements: Presence of serotonin and significant variability of melatonin content*, 13 Journal of Clinical Sleep Medicine 275–281 (2017).
[4] Grigg-Damberger, M. & Ianakieva, D., *Poor quality control of over-the-counter melatonin: What they say is often not what you get*, 13 Journal of Clinical Sleep Medicine 163–165 (2017).
[5] NIH National Library of Medicine Medline Plus, Melatonin, https://medlineplus.gov/druginfo/natural/940.html
[6] The New York Times, *Melatonin Isn't a Sleeping Pill. Here's How to Use It*, https://www.nytimes.com/2022/01/11/well/mind/melatonin-sleep-insomnia.html

recommends: "Start with the lowest dosage. Many children will respond to a low dose (0.5 mg or 1 mg)." [7] And regardless of side effects, consumers don't want to take excessive amounts of a neurohormone that alters brain chemistry.  And they certainly don't want to give such excessive dosages to their children.

> **B.**    **Scientific research reveals serious problems with the accuracy of melatonin dosing and labelling in Canada.  Scientists warn that the same is likely true of some U.S. brands.**

16.    In 2017, a study of Canadian melatonin brands found "high variability, ranging from −83% to +478%, of the labelled concentration of melatonin content in melatonin supplements." [8] For over 70% of the tested brands, the true amount of Melatonin varied more than 10% from the listed amount.  The amount of melatonin also varied highly between different lots (manufacturing batches) of the same product.  The researchers concluded that "manufacturers require increased controls to ensure melatonin supplements" are accurately labelled.

17.    U.S. scientists warned that this Canadian study "herald[s] what may also be true in OTC melatonin supplements marketed in the United States." [9] Likewise, the National Institute of Health has warned that "some melatonin supplements may not contain what's listed on the product label." [10] And Consumer Reports warned: "The findings … offer the latest proof of something supplement industry critics have long warned about: When it comes to this poorly regulated corner of modern medicine, consumers often don't know what they're buying." [11]

---

[7] *Melatonin for Kids: What Parents Should Know About This Sleep Aid*, healthychildren.org (from the American Academy of Pediatricians), https://www.healthychildren.org/English/healthy-living/sleep/Pages/melatonin-and-childrens-sleep.aspx

[8] Lauren, *Melatonin Natural Health Products and supplements*, 13 Journal of Clinical Sleep Medicine at 276.

[9] Madeleine, *Poor quality control of over-the-counter melatonin*, 13 Journal of Clinical Sleep Medicine at 163.

[10] NIH National Center for Complementary and Integrative Health, *Melatonin:What You Need To Know*,  https://www.nccih.nih.gov/health/melatonin-what-you-need-to-know

[11] Consumer Reports, *New Study Questions Ingredient Levels in Some Melatonin Supplements*, https://www.consumerreports.org/melatonin/study-questions-ingredient-levels-some-melatonin-supplements/

CLASS ACTION COMPLAINT                        4                            Case No.

**C.    Zarbee's sells over-the-counter melatonin supplements to millions of U.S. consumers.**

18.    Zarbee's is a major U.S. brand of melatonin supplements.  Its melatonin products ("Zarbee's Melatonin") are available nationwide at retailers like Walmart, Kroger, and Target. Millions of U.S. consumers buy Zarbee's Melatonin and rely on the accuracy of its labelling.  Many Zarbee's melatonin products are marketed specifically for children.

19.    Zarbee's makes and sells several varieties of Zarbee's Melatonin, including the following non-limiting examples:  Zarbee's Children's Sleep with Melatonin Gummies, Zarbee's Children's Sleep Chewable Tablet with Melatonin Supplement, and Zarbee's Sleep with Melatonin Gummy.  For each product, the label claims a specific amount of melatonin per serving, e.g., 1 mg or 3 mg.  Illustrative example products are shown below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






20.    All Zarbee's Melatonin products are substantially similar.  They all advertise melatonin as an active ingredient and claim to have a specific amount of melatonin per serving.

**D.    Scientific testing reveals that Zarbee's Melatonin has substantial and random overdoses of melatonin.**

21.    Liquid Chromatography-Mass Spectrometry analysis (LC-MS) can accurately measure the true amount of melatonin in an over-the-counter supplement.  For Zarbee's Melatonin, a university mass-spectrometry laboratory used LC-MS to test Zarbee's Melatonin.  The lab tested bottles from different manufacturing batches (lots).  The results are summarized below:

| Zarbee's type | Claimed melatonin dose (mg / gummy) | True melatonin dose (mg / gummy)[12] | True melatonin dose (%)[13] |
|---|---|---|---|
| Zarbee's Children's Sleep with Melatonin Gummies (Lot# 2124301250) | 1.00 | 1.29 | +128% |
| Zarbee's Children's Sleep with Melatonin Gummies (Lot# FD21080709245)[14] | 1.00 | 2.13 | +216% |

22.    As the results show, the melatonin content of Zarbee's is consistently (and randomly) overdosed.  Consistent with the study of Canadian brands, the dosages vary substantially between lots.

**E.    Zarbee's labelling is false and misleading to reasonable consumers.**

23.    By selling a melatonin supplement for sleep (i.e., a supplement that alters brain chemistry), Zarbee's is representing to consumers that its products are accurately dosed and labelled. When a consumer picks up a bottle of Zarbee's Melatonin, they reasonably expect that it actually has the dosage for which Zarbee's designed the recommended serving.  No reasonable consumer expects that a melatonin supplement has a random and substantial overdose of melatonin, compared to what it

---

[12] The lab tested three gummies per bottle and averaged the results. There was little variance in the melatonin content between gummies in the same bottle.
[13] The percentage ratio of the true dose to the claimed dose.
[14] Ms. Lopez's bottle.

is supposed to have.  And specifically, when a bottle of Zarbee's says it has a particular amount of melatonin per serving (e.g., 1 mg), consumers expect this to be accurate.   This is especially true for melatonin marketed for children.

24.    At a bare minimum, reasonable consumers would expect that if the true amount of melatonin in Zarbee's supplements was substantially (and randomly) higher than the listed amount, Zarbee's would prominently disclose this fact.  Consumers do not know the accuracy of Zarbee's dosing—that is exclusively within Zarbee's knowledge.  And Zarbee's affirmatively represents that its products have a specific amount of melatonin, e.g., 1 mg (for children) and 3 mg (for adults).

25.    Zarbee's labelling is false and misleading to consumers in multiple respects.  The dosage of Zarbee's Melatonin is not well-controlled and consistent with the dosages for which Zarbee's designed the recommended servings.  Zarbee's Melatonin does not have the amount of melatonin claimed on the label.  And Zarbee's does not even mention that the actual dosage is substantially higher.

26.    The inaccurate dosing and labelling of Zarbee's Melatonin is highly material to reasonable consumers.  Consumers need melatonin supplements to be accurately dosed and labelled, so that consumers aren't unknowingly ingesting more neurohormone than they intend to take.   No reasonable consumer wants to buy and ingest a supplement containing a random, undisclosed amount of melatonin.  No reasonable consumer wants a product that even has a material risk of such problems.  This is particularly true for melatonin supplements aimed at children.

27.    Zarbee's recognizes that its consumers demand accuracy in dosing and labelling. Zarbee's sells different types of Zarbee's Melatonin, with different claimed strengths, so that consumers can choose what is right for them.  Zarbee's website claims that "Each gummy contains 1 mg melatonin, which is safe" and can "help your little one."[15]  But it is not true: the products contain substantially more melatonin.

28.    Zarbee's admits that it is undesirable and even dangerous for consumers to ingest more melatonin than the recommended dosage on the bottles.  Zarbee's states on its bottles: "Take only as directed. Do not exceed recommended dosage." [16]  But due to Zarbee's inaccurate dosing and

_____

[15] https://www.zarbees.com/product/childrens-sleep-with-melatonin-gummies/

CLASS ACTION COMPLAINT                              8                              Case No.

labelling, Zarbee's customers are unknowingly doing exactly what Zarbee's recommends against (exceeding the recommended dosages).

29.     As described above, Zarbee's claims that it determines the melatonin content of "each gummy" to ensure "safety."  And it is a standard practice in the industry for manufacturers to test the potency of supplements before they are distributed.  Accordingly, Zarbee's tests the melatonin content of its products before distribution, and therefore knows that its products are systematically overdosed and its labels are misleading consumers.  In the alternative, Zarbee's recklessly chooses not to test the potency of its supplements or remains willfully blind to the melatonin content of its supplements.

**F.     Zarbee's overcharges millions of consumers.**

30.     Zarbee's false and misleading labelling drives the demand for Zarbee's Melatonin.  As explained above, consumers demand melatonin that is accurately dosed and labelled.  This is recognized by scientists, Consumer Reports, and Zarbee's itself.  If Zarbee's told the truth—that its dosing and labelling was seriously inaccurate—the price of its products would crater.  For example, on the Target website, a bottle of Zarbee's Children's Sleep with Melatonin Gummies costs $16.89. If consumers knew the truth—that this bottle likely has some random and excessive amount of melatonin per serving—Zarbee's could not sell it for anything close to $16.89 (or sell it at all). Plaintiff and each class member paid a substantial price premium driven by Zarbee's false and misleading labelling.

31.     In fact, without accurate dosing and labelling, Zarbee's Melatonin is worthless.  What reasonable consumer wants to buy a supplement that alters brain chemistry, knowing that it may be randomly and substantially overdosed?  What consumer would want to buy such a product for their children? If Zarbee's told the truth, its melatonin products could not sell.  Plaintiff and each class member paid for Zarbee's Melatonin products that are, in truth, worthless.  Thus, the full economic injury here is the entire price of the Zarbee's Melatonin that Plaintiff and class members purchased.

**G.     Ms. Lopez was misled and harmed by Zarbee's misleading labelling.**

32.     Like millions of other consumers, Ms. Lopez bought Zarbee's Melatonin and relied on the accuracy of Zarbee's dosing and labelling.

33.     In or around early June 2022, Ms. Lopez bought a bottle of Zarbee's Children's Sleep with Melatonin Gummies (Lot # FD21080709245) from a Walmart in Salinas, to give to her child (age 8).  Because she was buying a melatonin supplement that could alter brain chemistry in her child, she relied on the fact that Zarbee's dosages were well-controlled (i.e., that the actual dosage would match the recommended dosages).  She read and relied on the accuracy of the melatonin content on the label, when buying the product and deciding to give it to her child.  She would not have purchased the product if she knew that it was not accurately dosed or labelled.  In fact, knowing the truth, the product is worthless to her.

34.     Plaintiff wants Zarbee's to fix its manufacturing practices and sell its melatonin products with accurate dosing and labelling.  If Zarbee's fixes its products, so that they are accurately dosed and labelled, she would buy them again.  But given Zarbee's past deception, Plaintiff cannot rely on Zarbee's word alone that it has fixed the problem.  Plaintiff faces an imminent threat of harm because she will not be able to rely on Zarbee's labels in the future, and will not be able to buy Zarbee's Melatonin, even if Zarbee's claims to have fixed the issue.  To buy Zarbee's products again, Plaintiff needs the Court to enter an order forbidding Zarbee's from selling its melatonin unless it has fixed the dosing and labelling problem.  With that Court order in hand, Plaintiff could and would buy Zarbee's Melatonin again.  And with that order in hand, millions of other consumers will be protected from being deceived like Plaintiff was deceived.

**V.     Class action allegations.**

35.     Plaintiff brings her claims individually and on behalf of the following class and subclasses:

| Class or Subclass Name | Definition |
| --- | --- |
| Nationwide Class | All persons who purchased Zarbee's Melatonin in the United States during the applicable statute of limitations. |
| Multi-State Consumer Protection Subclass | All persons who purchased Zarbee's Melatonin in the identified states (*see* Count 1) during the applicable statute of limitations. |

CLASS ACTION COMPLAINT                         10                         Case No.

| California Subclass | All persons who purchased Zarbee's Melatonin in California during the applicable statute of limitations. |
|---|---|

36.     The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

*Numerosity*

37.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

*Commonality*

38.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- Whether Zarbee's Melatonin products are accurately dosed and labelled;
- Whether Zarbee's labelling is misleading to reasonable consumers;
- Whether Zarbee's violated state consumer protection laws;
- The monetary relief needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

39.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Zarbee's Melatonin.

*Predominance and Superiority*

40.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual

1   adjudication would create a risk that Zarbee's Melatonin labelling is found to be misleading for some

2   consumers, but not other similarly-situated consumers.

3        41.    Common questions of law and fact predominate over any questions affecting only

4   individual members of the proposed class. These common legal and factual questions arise from

5   central issues which do not vary from class member to class member, and which may be determined

6   without reference to the individual circumstances of any particular class member. For example, a core

7   liability question is common: whether Zarbee's labelling is misleading to reasonable consumers.

8        42.    A class action is superior to all other available methods for the fair and efficient

9   adjudication of this litigation because individual litigation of each claim is impractical.  It would be

10  unduly burdensome to separately litigate millions of individual claims.

11  ***Classwide injunctive relief***

12       43.    Zarbee's has acted or refused to act on grounds that apply generally to the class, so

13  that final injunctive relief is appropriate respecting the class as a whole.

14  **VI.    Claims.**

15               <u>**Count 1: Violations of State Consumer Protection Acts**</u>

16            **(on behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

17       44.    Plaintiff incorporates each and every factual allegation set forth above.

18       45.    As alleged below, Plaintiff brings individual and subclass claims based on California

19  law.  For the Multi-State Consumer Protection Subclass, Plaintiff brings this count for violations of

20  state consumer protection laws that are materially-similar to the laws of California, including:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |

| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

46.     Each of these statutes is materially similar.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires individualized reliance, or proof of defendant's knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.

47.     As alleged in detail above, Zarbee's misrepresentations and omissions are misleading to reasonable consumers in a material way.  Zarbee's false and misleading labelling was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of class members.

48.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 2: Violation of California Unfair Competition Law (UCL)

### (on behalf of Plaintiff and the California Subclass)

49.     Plaintiff incorporates each and every factual allegation set forth above.

50.     Plaintiff brings this cause of action individually and on behalf of the California Subclass.

51.     Zarbee's has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

52.     Zarbee's engaged in unlawful conduct by violating the FAL, as alleged below and incorporated here.

***The Fraudulent Prong***

53.     As alleged in detail above, Zarbee's labelling is false and misleading.  Its labelling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

*The Unfair Prong*

55.     Zarbee's conduct caused substantial injury to Plaintiff and subclass members.  The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none).  Inaccurately dosed and labelled melatonin supplements have no public utility.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading labels only injure healthy competition and harm consumers.

56.     Plaintiff and the class could not have reasonably avoided this injury.  As alleged above, Zarbee's misrepresentations and omissions were deceiving to reasonable consumers.

57.     Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers

58.     Defendant's conduct violated the public policy against false and misleading advertising, which is tethered to the CLRA and FAL.

*       *       *

59.     For all prongs, Plaintiff saw, read and reasonably relied on Zarbee's misrepresentations and omissions when purchasing Zarbee's Melatonin.  Classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Zarbee's Melatonin.

60.     Zarbee's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of class members.

61.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 3: Violation of California's False Advertising Law (FAL)

#### (on behalf of Plaintiff and the California Subclass)

62.     Plaintiff incorporates each and every factual allegation set forth above.

63.     Plaintiff brings this cause of action individually and on behalf of the California Subclass.

64.     As alleged in detail above, Zarbee's falsely advertised its products by falsely representing that Zarbee's Melatonin is accurately dosed and labelled.

65.     Defendant's misrepresentations and omissions were likely to deceive, and did deceive, Plaintiff and other reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

66.     Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Zarbee's Melatonin.  Classwide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

67.     Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

68.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

**Count 4: Breach of Express Warranty**

**(on behalf of the Nationwide Class)**

69.     Plaintiff incorporates by reference each and every factual allegation set forth above.

70.     Plaintiff brings this cause of action individually and on behalf of the Nationwide Class.

71.     Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the Zarbee's Melatonin Products, issued a material, written warranty by representing that Zarbee's Melatonin products contained the specific amount of melatonin identified on the label. This was an affirmation of fact about the products and a promise relating to the goods.

72.     This warranty was part of the basis of the bargain for Plaintiff and Class members. Plaintiff herself read and relied on this warranty.

73.     The Zarbee's Melatonin products do not conform to this warranty because, as alleged in detail above, they are not accurately dosed and labelled.

74.     Plaintiff provided Defendant with notice of this breach of warranty (on behalf of herself and the class), by mailing a notice letter to Defendant's headquarters on July 27, 2022.

75.     Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

## Count 5: Negligent Misrepresentation

### (on behalf of Plaintiff and the Nationwide Class)

76.     Plaintiff incorporates by reference the facts alleged above.

77.     Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

78.     As alleged in detail above, Defendant's labelling represented to Plaintiff and Class members that the Zarbee's Melatonin products are accurately dosed and labelled.

79.     As alleged in detail above, these representations were false.

80.     When Defendant made these misrepresentations, it should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

81.     Defendant intended that Plaintiff and class members rely on these representations and Plaintiff read and reasonably relied on them.

82.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

83.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

84.    Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 6: Intentional Misrepresentation

**(on behalf of Plaintiff and the Nationwide Class)**

85.    Plaintiff incorporates by reference the facts alleged above.

86.    Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

87.    As alleged in detail above, Defendant's labelling represented to Plaintiff and class members that the Zarbee's Melatonin products are accurately dosed and labelled.

88.    As alleged in detail above, these representations were false.

89.    As alleged above, when Defendant made these misrepresentations, it knew that they were false.

90.    In the alternative, Defendant was reckless or willfully blind to the truth.

91.    Defendant intended that Plaintiff and class members rely on these representations and Plaintiff read and reasonably relied on them.

92.    Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

93.    Plaintiff and class members were injured as a direct and proximate result of Zarbee's conduct because: (a) they would not have purchased Zarbee's Melatonin if they had known that Zarbee's has serious and systematic problems with its dosing and labelling; (b) they overpaid for the products because the products are sold at a price premium due to Zarbee's misleading labelling; or (c) they received products that were, in truth, worthless.

### Count 7: Unjust Enrichment/Quasi-Contract

**(on behalf of Plaintiff and the Nationwide Class)**

94.    Plaintiff incorporates by reference the facts alleged above.

CLASS ACTION COMPLAINT                    17                    Case No.

95.   As alleged in detail above, Zarbee's false and misleading labelling caused Plaintiff and the class to purchase Zarbee's Melatonin and overpay for it.

96.   In this way, Zarbee's received a direct and unjust benefit, at the expense of Plaintiff and the class.

97.   Plaintiff and the class seek the equitable return of this unjust benefit.

## VII.   Jury Demand.

98.   Plaintiff demands a jury trial on all issues so triable.

## VIII.   Prayer for Relief.

99.   Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages;
- Restitution, disgorgement, and other just equitable relief;
- Punitive damages, as available by law;
- Attorney's fees, as available by law;
- An injunction;
- Pre- and post-judgment interest;
- Any additional relief that the Court deems reasonable and just.

Dated: August 2, 2022              Respectfully submitted,

By: */s/ Jonas Jacobson*

Jonas B. Jacobson (Cal. Bar No. 269912)*
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Counsel for Plaintiff*

*Admitted to the N.D. Cal. Bar